IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEREMY LEON HARRIS,

    *Plaintiff,*

vs.

    Case No. 2:21-2264-EFM

CITY CYCLE SALES, INC.,

    *Defendant.*

**MEMORANDUM AND ORDER**

    Plaintiff Jeremy Harris brings this action against Defendant City Cycle Sales, Inc. ("CCS") alleging negligence and Kansas Consumer Protection Act ("KCPA") claims arising out CCS's service of Plaintiff's motorcycle and a subsequent accident in 2014. CCS seeks dismissal of Plaintiff's KCPA claims, which Plaintiff asserted in a prior state court action, based on his abandonment and waiver of those claims in the state court action, as well as the doctrine of res judicata and the expiration of the statute of limitations. For the reasons set forth more fully below, the Court denies Defendant's Motion (Doc. 13).

## I.  Factual and Procedural Background

The following facts are taken from Plaintiff's Complaint, documents incorporated by reference therein, and pleadings and public records from Plaintiff's prior state court action against CCS.[1]

At the time of the events in question, Plaintiff was actively enlisted in the United States Army and stationed at Fort Riley near Junction City, Kansas. On February 17, 2014, Plaintiff purchased a new Harley Davidson VRSCDX ("V-Rod") motorcycle from a dealership in Olathe, Kansas. The V-Rod came equipped with an anti-lock brake system ("ABS") designed to prevent its wheels from locking up during brake application, which can result in a dangerous loss of control. Shortly after he purchased the V-Rod, Plaintiff noticed that its ABS light was flashing continuously and, during a roundtrip from Junction City to Texas and back in late March or early April 2014, he noticed that the light sometimes flashed continuously, sometimes remained illuminated, and sometimes went completely off for short periods of time.

---

[1] Though normally the Court only considers the plaintiff's complaint in ruling on a motion to dismiss, the Court may consider documents of undisputed authenticity that are "central to the complaint." *Dunmars v. Ford Cty., Kan. Bd. of Comm'rs*, 2019 WL 3817958, at *3 (D. Kan. 2019) (citations omitted). "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (citations omitted). Further, a court generally may take judicial notice of pleadings in prior cases without converting a motion to one for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (citation omitted). Specifically, a defendant can properly raise the defense of res judicata in a Rule 12(b)(6) motion, and the Court may take judicial notice of the court's own records or public records from other proceedings. *Id.*; s*ee also Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego*, 931 F. Supp. 2d 1120, 1123 (D. Kan. 2013). Thus, the Court will not convert CCS's motion to dismiss into one for summary judgment. The Court takes judicial notice of the state court filings, which are discussed in Plaintiff's complaint and attached to CCS's motion and will consider these documents when deciding CCS's motion to dismiss.

CCS is located in Junction City and provides "Authorized Service" on Harley-Davidson motorcycles. Concerned that the V-Rod's ABS was not functioning properly, Plaintiff took the motorcycle to CCS's service department on April 14, 2014, for the Harley-Davidson 1,000-mile scheduled maintenance and service on the ABS. When specifically requesting service on the ABS, Plaintiff expressed his concerns and described in detail the ABS light's behavior since he purchased the motorcycle two months earlier. CCS agreed to perform the requested service and took possession of the V-Rod.

The following day, a CCS representative called Plaintiff and told him that service was complete, and the V-Rod was ready to be picked up. When Plaintiff arrived at CCS to pay for service and pick up the motorcycle, the CCS service manager and technician told him that the 1,000-mile scheduled service had been performed, that there were no ABS recalls or diagnostic trouble codes to check, that there were no problems with the ABS, and that "everything look[ed] good" and the V-Rod was "safe to ride." After this service, the ABS light continued exhibiting the same sporadic flashing as it had since Plaintiff had first purchased it.

On May 20, 2014, Plaintiff was operating the V-Rod at a speed of 25 miles per hour when he attempted to brake for a yellow traffic signal. Shortly after Plaintiff began applying the brakes, the ABS warning light illuminated and Plaintiff heard a "loud screech." One or both of the V-Rod's wheels locked up, causing the motorcycle to crash onto its left side and slide along the pavement with Plaintiff's leg pinned between it and the ground. As a result of the accident, Plaintiff suffered severe and permanent injuries to his left knee, ankle, and foot. In December 2015, the Army's Physical Evaluation Board determined that Plaintiff was unfit to continue military service due to the injuries he sustained in the May 20, 2014, motorcycle crash, and Plaintiff was therefore medically discharged from the army.

Following the accident, the V-Rod was taken to Historic Harley-Davidson ("Historic"), an authorized Harley-Davison dealer in Topeka, Kansas, for repair. Historic prepared two work order estimates or invoices—one for work necessary to repair the damage caused by the accident, and one for diagnostics, servicing, and repairs related to the pre-existing ABS problem. The work order invoice relating to ABS repairs indicates that Historic installed a new ABS module and repaired a pinched wire in the harness, which eliminated the ABS diagnostic trouble codes. Since Historic performed diagnostics, servicing, and repair on the V-Rod, there have been no issues with the ABS light and the motorcycle has functioned properly.

Plaintiff originally filed suit against CCS on May 19, 2016, in Geary County District Court, Case No. 2016-CV-000174 ("District Court Case"). He brought claims for negligence and violations of the KCPA arising from CCS's service of the V-Rod, representations to Plaintiff regarding that service, and Plaintiff's subsequent accident. CCS brought several comparative fault claims, including that Plaintiff lacked the training and experience necessary to safely operate the V-Rod.

On June 18, 2018, Plaintiff submitted his Amended Pretrial Questionnaire in the District Court Case, which included both negligence and KCPA counts. On July 23, 2018, both parties submitted proposed jury instructions to the district court by email; Plaintiff's version did not include a proposed jury instruction on his KCPA theory of liability.

The District Court Case was tried to a jury from August 6 to August 10, 2018. At the instruction conference after the parties rested, Plaintiff again did not submit any proposed instructions for his KCPA claims and, when the district court asked if Plaintiff proposed any further instructions, his counsel said no. The instructions given to the jury did not mention the KCPA or Plaintiff's claims thereunder, and Plaintiff did not object to this omission. While

Plaintiff did not object to the lack of a jury instruction on his KCPA theory of liability, he did object to the jury instruction on CCS's comparative fault claim. The district court overruled that objection.

On August 10, 2018, the jury returned a verdict for CCS, finding Plaintiff 100 percent at fault for his accident and CCS zero percent at fault. The district court entered a journal entry of judgment for CCS to that effect on August 22, 2018. Plaintiff filed a motion for a new trial, which did not include any issue relating to his KCPA claims. That motion was denied. Plaintiff then appealed the denial of his motion for a new trial and all other adverse rulings reflected in the district court's journal entry of judgment. The docketing statement Plaintiff filed in the Kansas Court of Appeals does not refer to his KCPA claims and indicates that the district court's journal entry of judgment is a "final disposition as to all claims by all parties."

On January 21, 2020, the Kansas Court of Appeals reversed the judgment for CCS and against Plaintiff and "remand[ed] with directions for a new trial," finding that the district court's jury instruction on Plaintiff's comparative fault due to lack of adequate training and experience injected reversible error into the trial and verdict. The appellate decision does not mention Plaintiff's KCPA claims. The Kansas Court of Appeals issued its Mandate on the appeal on February 27, 2020. In relevant part, the mandate states: "[O]n January 21, 2020, on consideration of the appeal, it was ordered and adjudged by the Court of Appeals that the judgment of the district court be reversed and remanded with directions."

On January 12, 2021, the parties agreed to and filed a Joint Stipulation of Dismissal Without Prejudice of the District Court Case. They further agreed that "the Kansas Administrative Orders related to Covid-19 will not extend the six-month period for re-filing under KSA § 60-518."

Plaintiff filed the present action on June 10, 2021, asserting both negligence and KCPA claims. CCS filed an answer on July 21, 2021, in which it asserted a number of affirmative defenses including failure to state a claim, expiration of the statute of limitations, law of the case, res judicata, and waiver. CCS now moves to dismiss Plaintiff's KCPA claims under Fed. R. Civ. P. 12(b)(6), asserting that the foregoing defenses apply because those claims were raised in the District Court Case but not submitted to the jury or pursued on appeal.

## II.     Legal Standard

Because a responsive pleading has already been filed, Defendant's motion is more properly styled as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) rather than a motion to dismiss under Rule 12(b)(6). This is a distinction without meaningful difference, however, as the standard is the same under both rules.[2] A defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[4] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim

---

[2] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

[3] Fed. R. Civ. P. 12(b)(6).

[4] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

rests.⁶  In ruling on the motion, the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.⁷  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.⁸

### III.   Analysis

CCS argues that Plaintiff cannot pursue KCPA claims in this action because: (1) he abandoned or waived those claims by failing to include them in the issues tried, submitted, and decided by the jury in the District Court Case, and by failing to brief them in his motion for a new trial before the district court and in his appeal to the Kansas Court of Appeals; (2) Plaintiff's KCPA claims are barred by the doctrine of res judicata, also known as claim preclusion; and (3) the claims are barred by the statute of limitations.  Fundamental to each of these arguments, CCS argues that the district court was required to instruct the jury on Plaintiff's KCPA claims if it found the evidence sufficient to support them, even if not requested by Plaintiff, and that the district court therefore made an implicit finding that those claims were legally insufficient.

Although CCS relies on this host of different, though related, doctrines and rules, the gist of its argument is that Plaintiff cannot pursue his KCPA theory of liability in this action because he ultimately chose not to pursue KCPA claims in his prior District Court Case and on appeal.

Plaintiff counters that the Kansas Court of Appeals entered an unqualified reversal and remand with directions for a new trial, leaving him free to pursue his KCPA claims on remand,

---

⁶ *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

⁷ *Iqbal*, 556 U.S. at 678.

⁸ *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

or in this federal case filed after the parties stipulated to the dismissal of the District Court Case without prejudice. The Court addresses each of CCS's arguments in turn.

**A.     Did Plaintiff Abandon or Waive His KCPA Claims in the District Court Case Such that They Are Unavailable in this Action?**

To begin, the Court is not persuaded by CCS's argument that the district court was required to instruct the jury on Plaintiff's KCPA claims even in the absence of a request to do so, and that by declining to give such instruction, the court implicitly found that Plaintiff's claims were not supported by the evidence. The Kansas Supreme Court has stated that "trial courts are required to give an instruction supporting a party's theory of the case *if 'the instruction is requested* and there is evidence supporting the theory which, if accepted as true and viewed in the light most favorable to the requesting party, is sufficient for reasonable minds to reach different conclusions based on the evidence.' "[9] Thus, in the absence of a request, the district court was not required to instruct the jury regarding Plaintiff's KCPA theory of liability and cannot be found to have ruled on the sufficiency of the evidence supporting those claims, implicitly or otherwise.

Abandonment and waiver are different issues entirely. At least for the purpose of the first district court trial, Plaintiff *did* abandon his KCPA claims. Plaintiff chose not to utilize any of his opportunities to either request jury instructions on his KCPA claims or object to the lack of such instructions before the jury began deliberations,[10] and "[a] claim that [is] not submitted to

---

[9] *Foster ex rel. Foster v. Klaumann*, 296 Kan. 295, 294 P.3d 223, 229 (2013) (emphasis added) (quoting *Puckett v. Mt. Carmel Reg'l Med. Ctr.*, 290 Kan. 406, 228 P.3d 1048, 1059 (2010)).

[10] *See* K.S.A. §§ 60-251(a)-(b) (setting forth procedure and timing for requesting jury instructions before, at, or after the close of evidence); 60-251(c)(1)-(2) (setting forth procedure for timely objections to the court's failure to give an instruction).

the jury at the conclusion of the evidence is considered abandoned."[11]  Nor did Plaintiff preserve the issue for appeal in the District Court Case.[12]  But this is not determinative as to whether Plaintiff's KCPA claims must be dismissed in this case.  For that question, the parties direct the Court to the law of the case doctrine and the Kansas mandate rule.

CCS contends that Plaintiff is bound by his counsel's strategic litigation decision not to submit the KCPA claims to the jury in the District Court Case, and that under the law of the case doctrine, Plaintiff cannot have a second bite at the apple with respect to those claims.  In *State v. Collier*,[13] the Kansas Supreme Court explained that the "law of the case is not an inexorable command, or a constitutional requirement, but is, rather, a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so."[14]  In other words, "the law of the case [is] not 'a cast-iron rule, incapable of relaxation under any circumstances, yet it must be adhered to where the question is one of great doubt, *has been thoroughly considered*, and is one whose decision involves no serious injury to general rights.' "[15]

Plaintiff's abandonment of his KCPA claims, which were never considered or ruled on by the district court or the jury, could not have become the "law of the case" in a manner that would compel this Court to find them precluded in this action.  Although CCS argues that by

---

[11] *State ex rel. Kansas City v. Campbell*, 505 S.W.3d 299, 300 (Mo. Ct. App. 2016) (citation omitted)

[12] *See, e.g.*, *Howell v. Calvert*, 268 Kan. 698, 1 P.3d 310, 313 (2000) ("Neither plaintiff objected to the absence of [the instruction] before the jury retired to deliberate. Plaintiffs have not preserved this issue for appeal.") (citations omitted).

[13] 263 Kan. 629, 952 P.2d 1326 (1998).

[14] *Id.* at 1328 (quoting 5 Am. Jur. 2d, Appellate Review § 605).

[15] *Id.* at 1329 (emphasis added) (quotation omitted).

abandoning those claims, Plaintiff has implicitly conceded a lack of evidence to support them, the cases CCS cites on this point are factually distinguishable or otherwise unpersuasive.[16] Nor has the issue of whether Plaintiff's KCPA claims are supported by sufficient evidence ever been "decided by [any] court,"[17] either "explicitly or by necessary implication."[18]

And even if those claims had been decided, such that they became the law of the case, a court may depart from the law of the case in certain circumstances, including when evidence in a subsequent trial is substantially different. This plainly means that the district court would not necessarily have been constrained on remand by any prior implicit holding as to Plaintiff's KCPA claims.[19] The Tenth Circuit has "routinely recognized that the law of the case doctrine is 'discretionary, not mandatory,' and that the rule 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power.' "[20]

---

[16] *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 507 F. Supp. 3d 1289, 1368 n.29 (D. Kan. 2020) (party conceded in writing that discovery had not revealed evidence to support counterclaim allegations); *Martin v. Cont'l Oil Co.*, 141 Kan. 37, 39 P.2d 917, 918 (1935) (where plaintiff dropped allegations of temporary damages from the case before trial and jury found no permanent damages, but nonetheless returned general verdict for plaintiff, Kansas Supreme Court reversed and remanded with specific instruction to enter judgment for defendant); *O'Connor v. City & Cty. of Denver*, 894 F.2d 1210, 1215 (10th Cir. 1990) (where plaintiffs abandoned and did not seek determination from trial court on their claim that amended version of municipal code was unconstitutional, that issue was not properly before the court of appeals); *Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 793 (10th Cir. 2021) (plaintiff forfeited argument on appeal by failing to make it in the district court). These cases either involve plainly different facts or do not address whether the abandonment of a claim amounts to an "implicit concession" that the evidence does not support it.

[17] *Collier*, 952 P.2d at 1330 (quoting *Renfro v. City of Emporia*, 732 F. Supp. 1116, 1117 (D. Kan. 1990), *aff'd*, 948 F.2d 1529 (10th Cir. 1991)); *see also Kennedy v. Lubar*, 273 F.3d 1293, 1299 (10th Cir. 2001) ("[L]aw of the case principles apply only to decisions on the actual merits.") (citation omitted)); *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1553 (10th Cir. 1991) ("The doctrine of law of the case comes into play only with respect to issues previously determined.") (quoting *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979))).

[18] *Black & Veatch Corp. v. Aspen Ins. (Uk) Ltd.*, 378 F. Supp. 3d 975, 982 (D. Kan. 2019) (quoting *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995)).

[19] *See, e.g.*, *Fish v. Schwab*, 957 F.3d 1105, 1139-40 (10th Cir. 2020); *Mason*, 948 F.2d at 1553 (stating that "the district court may reconsider an issue and disregard the appellate court mandate if the subsequent trial produces substantially different evidence") (citation omitted).

[20] *Kennedy*, 273 F.3d at 1299 (quotation omitted).

Moreover, the law of the case doctrine generally applies to issues raised again in the same case rather than in a successive suit.[21] "The law of the case and collateral estoppel are different in that collateral estoppel prevents the relitigation of issues in successive suits between the same parties; the law of the case prevents relitigation of the same issues within successive stages of the *same* suit."[22] Thus, "[t]he doctrine of the 'law of the case' generally precludes a court from reconsidering an issue that has already been decided in the *identical case, either by the same court or a superior court*."[23] The law of the case does not apply here to this second case before a different tribunal.

The mandate rule, on which Plaintiff relies, is a "a subspecies" of the law of the case doctrine.[24] Under the mandate rule, the trial court is required to honor the rulings of superior courts.[25] "It is axiomatic that on remand for further proceedings after decision by an appellate court, a trial court must proceed in accordance with the mandate and the law of the case as established on appeal."[26] A corollary to this axiom, however, is that "[t]he mandate rule does

---

[21] *Fish*, 957 F.3d at 1139 ("The law-of-the-case doctrine provides that, 'when a court rules on an issue of law, the ruling should continue to govern the same issues in subsequent stages in the *same case*.'") (emphasis added) (citations and internal quotation omitted); *State v. West,* 46 Kan. App. 2d 732, 281 P.3d 529, 532 (2011) (stating that the "law-of-the-case promotes the same goals as res judicata except that it operates within the life of a single case rather than across successive cases"); *Pierson v. City of Topeka*, 56 Kan. App. 2d 92, 424 P.3d 549, 556 (2018) (citation omitted).

[22] *Collier*, 952 P.2d at 1330 (citation omitted); *see McIlravy v. Ker-McGee Coal Corp.*, 204 F.3d 1031, 1034 n.1 (10th Cir. 2000) (explaining that while the law of case and the issue preclusion prong of res judicata are similar, the "law of the case is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation," while "[r]es judicata does not speak to direct attacks in the same case, but rather has application in subsequent actions") (citation omitted).

[23] *United States v. Real Prop. Located at Incline Village*, 976 F. Supp. 1327, 1353 (D. Nev. 1997) (emphasis added) (quoting *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)).

[24] *Collier*, 952 P.2d at 1331 (citation omitted).

[25] *See* K.S.A. §§ 60-2106(c), 20-108.

[26] *Collier*, 952 P.2d at 1332 (quoting *Casey v. Planned Parenthood of Se. Pa*., 14 F.3d 848, 857 (3d Cir. 1994)).

not . . . prevent a district judge from doing whatever else is necessary to dispose of a case."[27] "When further proceedings follow a general remand, the lower court is 'free to decide anything not foreclosed by the mandate' issued by the higher court."[28] In this case, the Kansas Court of Appeals simply reversed and remanded with directions for a new trial without touching on Plaintiff's KCPA claims.

While this case is difficult due to its unique procedural history, it appears that neither the law of the case doctrine nor the related mandate rule necessarily would have precluded the district court from entertaining the KCPA claims on remand, particularly if the evidence presented at the second trial varied from that presented at the first. Although a district court "may not consider matters which are not essential to the implementation of the ruling of the appellate court," the appellate ruling in the District Court Case was for an entirely *new trial*, leaving the district court discretion to preside over the trial proceedings.[29] "Reversal of a judgment and remand for a new trial places the parties in the same position, insofar as relief is concerned, as if the case had never been tried."[30] Most critically, the law of the case doctrine does not preclude Plaintiff from pursuing his KCPA claims in this successive federal case filed after the voluntary dismissal of the District Court Case.

---

[27] *State v. Soto*, 310 Kan. 242, 445 P.3d 1161, 1170 (2019).

[28] *Guidry v. Sheet Metal Workers Int'l Ass'n, Loc. No. 9*, 10 F.3d 700, 706 (10th Cir. 1993), *abrogated in part on other grounds on reh'g*, 39 F.3d 1078 (10th Cir. 1994) (en banc) (quoting *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 971 (10th Cir. 1991)); *see also Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1101–02 (10th Cir. 2015) ("The scope of the mandate . . . is carved out by exclusion: unless the district court's discretion is specifically cabined, it may exercise discretion on what may be heard.") (quoting *Dish Network Corp. v. Arrowood Indem. Co.*, 772 F.3d 856, 864 (10th Cir. 2014)).

[29] *Edwards v. State*, 31 Kan. App. 2d 778, 73 P.3d 772, 780-81 (2003); *see also State v. Morton*, 283 Kan. 464, 153 P.3d 532, 539 (2007) ("[W]hen a second trial . . . is pursued in a case, the first decision is the settled law of the case on all questions *addressed in a first appeal*.") (emphasis added) (citation omitted)).

[30] *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1096 (10th Cir. 1991) (citing *Gospel Army v. Los Angeles*, 331 U.S. 543, 546 (1947)).

The many cases CCS cites in arguing that Plaintiff waived or abandoned his KCPA claims such that he may not pursue them here are distinguishable and unpersuasive. These cases are generally of several types, including: (1) cases holding that a party may not bring a second appeal in the same case regarding a matter that was not raised in the first appeal;[31] and (2) cases addressing the binding nature of counsel's strategic or tactical decisions in district court on a direct appeal.[32] Among these cases, however, none deal with the question of whether a claim not decided but abandoned during a first trial may be pursued in a second trial following an unqualified remand.

Based on the foregoing, the Court concludes that the doctrines of abandonment, waiver, or law of the case do not preclude Plaintiff from asserting his KCPA claims in the instant action.

**B.     Are Plaintiff's KCPA Claims Barred by the Doctrine of Res Judicata?**

CCS also argues that Plaintiff's KCPA claims are precluded by the doctrine of res judicata. "Federal courts must give a state court judgment the same preclusive effect as would its originating state."[33] Under Kansas law, res judicata (or claim preclusion) consists of four elements: (1) the same cause of action or claim; (2) the same parties; (3) the claims in the current case were or could have been raised in the prior action; and (4) a final judgment on the merits in

---

[31] *See, e.g.*, *Matter of Marriage of Gerleman*, 56 Kan. App. 2d 578, 435 P.3d 552, 558 (2018) (holding, in a case where party filed a motion to void trial court judgment after prior appeal, that "all issues . . . that could have been raised in a prior appeal will not be considered in a later appeal"); *Cooke v. Gillespie*, 285 Kan. 748, 176 P.3d 144, 150 (2008) (finding plaintiff's argument regarding statute of limitations waived and abandoned when not raised in prior appeal).

[32] *See, e.g.*, *State v. Hargrove*, 48 Kan. App. 2d 522, 293 P.3d 787, 805 (2013) (holding that "a tactical decision to request a jury instruction on attempted aggravated burglary that omitted the elements of theft" barred counsel from arguing on *direct appeal* "that the conviction be reversed based on that omission"); *Doe v. City of Albuquerque*, 667 F.3d 1111, 1136 (10th Cir. 2012) (holding that, because the defendant failed to provide evidence as to two dispositive factors of the relevant legal standard at the summary judgment phase, it was bound by that "strategic decision" on appeal).

[33] *Campbell v. City of Spencer*, 777 F.3d 1073, 1078 (10th Cir. 2014) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

the prior action.[34]  Plaintiff seems only to dispute the last of these elements—that there was a final judgment on the merits in the District Court Case.  As such, the Court focuses its attention there.

Defendant's position on this issue is difficult to pin down.  In its opening brief, Defendant seems to once again rely on the premise that there was some implicit judgment by the district court that Plaintiff's KCPA claim was unsupported by the evidence.  But in its reply, Defendant clarifies that it "does not argue the State Court made any decision on the merits for the KCPA claims."

Ultimately, though, it matters little which of these positions Defendant takes.  There was no final judgment on the merits on the KCPA claim.  "A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel."[35]  Whatever final judgment Defendant contends (or does not contend) that the District Court entered in state court action, that judgment no longer has preclusive effect after the reversal and remand from the Kansas appellate court.  Thus, a required element of res judicata is not present with respect to the KCPA claims, and those claims are not precluded on that basis in this action.

C.     **Are Plaintiff's KCPA Claims Barred by the Statute of Limitations?**

Defendant's final argument in its Motion to Dismiss is that Plaintiff's KCPA claims are now barred by the applicable statute of limitations.  The statute of limitations for actions under

---

[34] *Winston v. State Dep't of Soc. & Rehab. Servs.*, 274 Kan. 396, 49 P.3d 1274, 1285 (2002) (citation omitted).

[35] *United States v. Lacey*, 982 F.2d 410, 412 (10th Cir. 1992) (citation omitted).

the KCPA is three years from the date the violation occurs.[36] Obviously, more than three years have passed between Plaintiff's filing of the instant action and the date of the alleged violations, which occurred between April 14, 2014, when CCS serviced the V-Rod, and May 20, 2014, the date of the accident. But, relevant here, Kansas has a "saving statute," which allows a plaintiff to commence a new action within six months after the failure of an earlier action so long as that action failed "otherwise than upon the merits."[37]

Defendant contends that, while Plaintiff's negligence claims were preserved under the saving statute, his KCPA claims were not. Defendant relies on many of the arguments it has already made (and this Court has rejected), such as its suggestion that the district court made an implicit determination regarding the KCPA claim, which then became the law of the case. Defendant contends that this this implicit determination constituted a failure of the KCPA claim "on the merits," such that the savings statute's six-month time fuse began to run as soon as the KCPA claims were abandoned in the District Court Case, on August 10, 2018. This would leave Plaintiff's instant KCPA claims now barred by the statute of limitations.

But, as noted above, the Court has already rejected the premise on which Defendant's argument relies. The district court did not make an implicit judgment on the merits of Plaintiff's KCPA claims when instructions on that claim were not given to the jury. And even though Plaintiff abandoned his KCPA claims for the purposes of the district court action, K.S.A. § 60-518 has been liberally construed by the Kansas Supreme Court to not require a subsequent, saved

---

[36] *See Haag v. Dry Basement, Inc.*, 11 Kan. App. 2d 649, 732 P.2d 392, 394 (1987) (citing K.S.A. § 60-512(2)); *see also Campbell v. Hubbard*, 41 Kan. App. 2d 1, 201 P.3d 702, 706 (2008) ("Thus, the time limit for bringing a claim under the KCPA begins when the KCPA violation occurs. There is no additional period provided to discover the claim or to assess the damages before the limitations period begins to run.").

[37] K.S.A. § 60-518.

action to have claims identical to the original.[38]  Rather, the actions must only be "substantially similar" in that they arise from the same factual circumstances and the first action put the defendant on notice of the plaintiff's purpose.[39]  Plaintiff's KCPA claims clearly arise out of the same factual circumstances at issue in the District court action, as Defendant itself recognized in its res judicata arguments.  These claims are also preserved by the Kansas saving statute.

This case is very similar to one previously before the Western District of Oklahoma.  In *Hagy v. American Honda Motor Co.*,[40] the court applied Oklahoma's saving statute[41] to the question of whether the plaintiffs, after abandoning certain legal theories before trial in state court, could now assert those theories in a federal action after the state verdict was reversed and remanded by the Oklahoma appellate court, and plaintiffs voluntarily dismissed without prejudice before refiling in Oklahoma federal court.[42]  The court denied the defendants' request to limit the theories of recovery available to the plaintiffs in the federal action.  Though it ultimately did so on an unrelated procedural ground, the court issued this cautionary note to the defendants:

> To the extent defendants may seek to limit plaintiffs' new case based on the effect § 100 [the saving statute], Oklahoma law is clear that the statute allows the refiling of the same causes of action asserted in a prior case and that a cause of

---

[38] *Seaboard Corp. v. Marsh Inc.*, 295 Kan. 384, 284 P.3d 314, 334 (2012).

[39] *Seaboard Corp.*, 284 P.3d at 334.

[40] 125 F. Supp. 2d 456 (W.D. Okla. 2000).

[41] The Oklahoma statute is similar in relevant respects to Kansas's statute. *See* Okla. Stat. tit. 12, § 100. Additionally, it has been interpreted by the Oklahoma Supreme Court in a manner similar to the Kansas Supreme Court's interpretation of the Kansas saving statute.  *Compare Chandler v. Denton*, 741 P.2d 855, 863–64 (Okla. 1987) (saving statute preserved plaintiff's second action, which was based on new legal theories, because defendant was put on notice in the first action of the underlying facts from which all claims arose) *with Seaboard Corp.*, 284 P.3d at 334.

[42] *Hagy*, 125 F. Supp. 2d at 457–58.

action is defined using a transactional approach that permits inclusion of all theories of liability arising from the same operative event.[43]

Thus, the court suggested that the Oklahoma saving statute would permit the plaintiffs to bring "all theories of liability arising from the same operative event," even if they had abandoned certain of theories in the previous state court action.

Based on the Kansas Supreme Court's interpretation of the Kansas saving statute, the Court concludes that the *Hagy* court's reasoning is equally applicable to this case. Plaintiff should be permitted, under K.S.A. § 60-518, to bring all theories of liability arising from CCS's diagnosis of the V-Rod and his subsequent accident, even if those theories were abandoned in an earlier state court action. Plaintiff's KCPA claims are not barred by the applicable statute of limitations.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Plaintiff's KCPA Claims (Doc. 13) is hereby **DENIED**.

**IT IS SO ORDERED**.

Dated this 13th day of April, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[43] *Id.* at 460 n.4 (citations omitted).