## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JEREMY LEON HARRIS,

*Plaintiff,*

vs.

Case No. 21-cv-02264-EFM

CITY CYCLE SALES, INC.,

*Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant City Cycle Sales, Inc.'s Motion for Summary Judgment. Plaintiff Jeremy Harris sued Defendant in connection with scheduled maintenance Defendant performed (or did not perform) on his motorcycle. Plaintiff alleges Defendant's negligence during this maintenance caused him to sustain injuries during a subsequent single-vehicle motorcycle collision, and that Defendant's conduct and statements during the maintenance violated the Kansas Consumer Protection Act ("KCPA"). Defendant moves for summary judgment as to all of Plaintiff's claims. The vast majority of Plaintiff's claims present a genuine issue for trial, but his claim that Defendant breached a duty to follow-up with him after the service appointment is without merit. The Court therefore grants in part and denies in part Defendant's Motion (Doc. 29).

## I.      Factual and Procedural Background[1]

In February 2014, Plaintiff purchased a new, 2014 Harley-Davison VRSCDX "V-Rod" motorcycle from a Harley-Davidson dealership in Olathe, Kansas.  It came equipped with an anti-lock brake system ("ABS"), as is standard for this motorcycle.  The V-Rod was delivered to Plaintiff at his residence in Junction City, Kansas.

After receiving the V-Rod, Plaintiff rode it to a nearby parking lot to practice maneuvers he had learned in a motorcycle safety class in January 2014.  Plaintiff noticed that, as he drove the V-Rod, the ABS light flashed continuously.  According to the V-Rod owner's manual, the ABS lamp should not remain on or flash at speeds above 3 mph.  The lamp's flashing or remaining on above speeds of 3 mph means the ABS is not functioning properly.  Plaintiff, having read the manual, was concerned the ABS was not working properly.  But when he applied the brakes while practicing, he felt a the "slight pulsation" described in the owner's manual as indicative of the ABS's functioning and the wheels did not lock up.  Plaintiff believed this meant the ABS was functioning properly.

Plaintiff drove the V-Rod for several months without incident.  But through it all the ABS lamp continued its erratic behavior.   It would flash continuously at times, and others it would remain illuminated or go off completely for short periods.  Plaintiff noted that the ABS lamp exhibited all of these behaviors as he drove the V-Rod to Texas and back in late March or early April 2014.

---

[1] In accordance with summary judgment procedures, the Court has laid out the uncontroverted material facts in the light most favorable to the non-moving party, the Plaintiff.  The facts, where controverted, are noted as such.

On April 14, 2014, Plaintiff took the V-Rod to Defendant for scheduled maintenance.  The V-Rod owner's manual recommends maintenance after the first 1,000 miles driven, a milestone Plaintiff had exceeded.

Defendant is an authorized Harley-Davidson dealer in Junction City, Kansas.  At the time, Defendant had an authorized Harley-Davidson service department.  When he took the V-Rod in, Plaintiff spoke directly with Defendant's service manager, Dean Mizes, and informed him that the ABS lamp had been behaving erratically at operating speeds since he purchased the V-Rod.  Defendant agreed to perform the requested maintenance and took possession of the V-Rod.

Defendant's employees, when attempting to perform maintenance on a customer's motorcycle, follow the Service Operations Manual ("SOM").  For Plaintiff's V-Rod, the 2014 V-Rod Models Electrical Diagnostics Manual ("EDM") was also relevant to Mizes' attempted maintenance.  Section 5.2.2 of the SOM states "please do not attempt a repair until the customer's concern has been verified."  That section further states "[i]f you are unable to duplicate a customer's concern, road test the motorcycle while the customer rides on another motorcycle next to you, if this can be done safely, so they may demonstrate their concern to you."  Inability to duplicate the customer's concern should be documented on the repair order, including what steps were taken to diagnose the concern.

Because of Plaintiff's concern for the ABS, Mizes first checked the V-Rod's Diagnostic Trouble Codes ("DTCs").  The parties dispute whether Mizes did this in Plaintiff's presence.  Mizes testified that he found no current or historic DTCs on the V-Rod's onboard computer.[2]

---

[2] Plaintiff repeatedly emphasizes in reference to Mizes' testimony that it does "not support the absence of a genuine dispute of material fact."  He goes on to say that Mizes' credibility "is for the jury to determine, and the jury is free to believe or disbelieve any of his testimony."  But Plaintiff offers nothing to controvert Mizes' testimony as to the actions he took to diagnose the V-Rod's purported ABS issues.  This is likely because no other witness has

There is some dispute as to whether the EDM suggests Mizes should have used a tool called Digital Technician II ("DT II") to diagnose the ABS issues.  Plaintiff's expert, Laurence McCracken, testified that had Mizes used the DT II, it would have led him to perform the "wiggle test" which likely would have laid bare the ABS issue.

According to the SOM, if a customer complains of an intermittent problem, and onboard diagnostics are not helpful, the technician should attempt to reproduce the problem.  A test ride is also prescribed for the 1,000-mile routine maintenance on the V-Rod.  The EDM further provides that if a customer complains the "ABS indicator is always on or inoperative . . . the malfunction must be present during diagnosis in order to prevent unnecessary parts replacement."

The parties dispute whether Mizes conducted a road test of the V-Rod.  Mizes testified that he did complete a road test, during which he deliberately braked at high enough speeds to activate the ABS.  He states that he the ABS performed properly with each braking test and that he was unable to observe intermittent illumination of the ABS light, as reported by Plaintiff.  But Plaintiff points to Mizes own testimony that he did not independently document such road test.[3]  In any event, the parties agree that Mizes did not conduct a side-by-side road test with Plaintiff.

The parties also dispute whether Mizes should have contacted the Harley Davidson technical support line.  Mizes did not contact technical support because he could not duplicate the ABS light problem and there were not DTCs.  He went on to say that, in his experience, technical support would not have been able to help.  But Plaintiff cites the SOM manual, which states that if "the technician is unable to diagnose an alleged customer concern, or if the motorcycle is in for

---

personal knowledge of what Mizes did with the V-Rod.  As such, the testimony of Mizes remains uncontroverted for the purposes of summary judgment, except where noted.

[3] *See Ruiz v. Kepler*, 832 F. Supp. 1444, 1449 (D.N.M. 1993) (finding that lack of documentation that defendant's policies and procedures were followed raised a genuine issue of material fact).

a second attempt to repair the same alleged concern, the Service Manager or Technician should contact the Technical Support Line." Plaintiff asserts that is exactly what happened here; Mizes was unable to diagnose the problem, so the SOM manual indicates that he should have contacted the technical support line.

On April 15, 2014, a representative of Defendant called Plaintiff and told him the requested service was done and his V-Rod was ready for pick-up. Plaintiff testified that he asked about the ABS and Mizes responded "oh, yeah, that. We checked it, we couldn't find anything wrong with the system, but we don't know why the light is blinking on and off. You're safe to ride it, though." Mizes has a different recollection of this exchange. He testified that he told Plaintiff that he could not reproduce his ABS complaints at all, and that the ABS and light functioned normally on a test ride. He gave Plaintiff the choice of leaving the V-Rod for further testing, which Plaintiff chose not to do. Mizes further testified that he told Plaintiff to inform Defendant if the ABS light came on intermittently again, which Plaintiff denies. Mizes, at this time, knew it was dangerous for Plaintiff to operate his motorcycle with the ABS light on continuously.

As Plaintiff was leaving Defendant's parking lot, the ABS light purportedly behaved erratically once more. Plaintiff did not return to Mizes to inform him of this.

Plaintiff rode the V-Rod almost every day from when he picked up the bike from Defendant until his accident. The ABS light continued to exhibit the same intermittent flashing every time he rode it. Plaintiff did not seek additional service as to the ABS.

McCracken testified that Defendant's "procedures manual" provides that a follow-up call is supposed to be made after a service appointment. Mizes agreed that "making sure someone in the service department follows up with the customer after a service appointment is important." Plaintiff did not receive a follow-up call from Mizes or anyone else associated with Defendant.

On May 20, 2014, while Plaintiff was approaching an intersection in Fort Riley, he attempted to brake. As he applied the brakes, Plaintiff saw the ABS warning light illuminate and heard a "loud screech." Plaintiff lost control and fell over. The V-Rod fell onto his left leg. Plaintiff contends the result of the crash was one or both wheels locking up, caused by the failure of the ABS.

Plaintiff originally filed this case in Kansas state court in Geary County. He asserted both negligence and KCPA claims, as he does here. But sometime prior to trial, Plaintiff decided to only present his negligence claims to the jury. He did not propose an instruction on the KCPA theories of liability, and at trial, the court did not instruct the jury as to those claims. The jury returned a verdict in favor of the Defendant, finding Plaintiff 100% at fault for his injuries. Plaintiff appealed, and the judgment was reversed by the Kansas Court of Appeals on the ground that the district court's comparative fault instruction was in error. The case was remanded for a new trial in the district court. Instead, the parties stipulated to the dismissal of the state court case without prejudice.

Plaintiff thereafter filed the instant action, asserting both negligence and KCPA claims. Defendant moved to dismiss the KCPA claims on the grounds of abandonment, waiver, res judicata, and expiration of the statute of limitations. The Court denied Defendant's motion. Defendant now moves for summary judgment as to both Plaintiff's negligence claim and his KCPA claims.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.[4]   A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5]   The movant bears the initial burden of proof, though "a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[6]   "Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[7]   The nonmovant must then bring forth "specific facts showing a genuine issue for trial."[8]   These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[9]   The court views all evidence and draws "reasonable inferences therefrom in the light most favorable to the nonmoving party."[10]

## III.    Analysis

Defendant seeks summary judgment both on Plaintiff's negligence claims and his claims under the KCPA.  The Court examines each in turn.

---

[4] Fed. R. Civ. P. 56(a).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (quoting *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[7] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp.*, 477 U.S. at 325).

[8] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (quoting *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999)).

[9] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[10] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (quoting *N. Tex. Prod. Credit Ass'n v. McCurtain Cty. Nat'l Bank*, 222 F.3d 800, 806 (10th Cir. 2000)).

A.      **Negligence Claims**

1.      *Legal Duty*

Defendant's first argument in its Motion is that, on the uncontroverted facts, Plaintiff cannot meet the elements of negligent misrepresentation under Kansas law. Specifically, Defendant seems to hone in on Plaintiff's contention in the Pretrial Order that Defendant breached a duty it owed to Plaintiff by "[r]epresenting to Harris that the V-Rod's ABS was functioning properly and that the motorcycle was 'safe to ride.' " Defendant goes on to compare the facts of this case to Kansas case law regarding negligent misrepresentation, noting that these types of cases generally recognize a cause of action by a "purchaser who relies on a material misrepresentation, even though innocently made . . . against the broker originating or communicating the misrepresentation."[11] Based on this, Defendant concludes that a negligent misrepresentation is only actionable in the context of a commercial transaction. And because the transaction between Plaintiff and Defendant was already completed when Mizes allegedly said the V-Rod was "safe to ride," it cannot be found liable for negligent misrepresentation under Kansas law.

The Court notes at the outset that Plaintiff vehemently disagrees with Defendant's assumption that he brings a cause of action for negligent misrepresentation. Rather, he states that he is suing for simple negligence, which just so happens to arise from a misrepresentation on the part of Defendant. The Court finds this distinction untenable and unsupported by any citation to legal authority. Plaintiff's claim that Mizes negligently misrepresented that the V-Rod was "safe to ride" is properly considered as a claim for negligent misrepresentation under Kansas law.

---

[11] *Mahler v. Keenan Real Est., Inc.*, 255 Kan. 593, 876 P.2d 609, 617 (1994) (citing Restatement (Second) of Torts § 552(C)(1) (1976)).

But contrary to Defendant's contentions, the Court does not believe Kansas law constrains that cause of action to commercial transactions.  The Kansas Supreme Court in *Rinehart v. Morton Buildings, Inc.*,[12] enunciated the elements of negligent misrepresentation.  "One seeking damages on a negligent misrepresentation theory must show:"

> (1) The person supplying the false information failed to exercise reasonable care or competence in obtaining or communicating it; (2) the party receiving the false information reasonably relied on it; and (3) the person relying on the false information is a person or one of a group of persons for whose benefit and guidance the information is supplied or a person or one of a group of persons to whom the person supplying the information knew the information would be communicated by another; and (4) the party receiving the information suffered damages.[13]

Notably absent from these elements is a requirement that the parties were engaged in a commercial transaction or that privity of contract existed between the parties.[14]

Based on this, in *Davis v. City of Topeka*,[15] the Kansas Court of Appeals applied negligent misrepresentation principles to a former deputy fire chief's claim that the City of Topeka had misrepresented his eligibility, under municipal ordinance, for his position.[16]  Because he was later determined to be ineligible based upon a court's construction of the relevant ordinance, he was forced to resign.[17]  Despite the non-commercial nature of this case, the Court of Appeals applied the principles of negligent misrepresentation all the same.[18]  Accordingly, the Court cannot conclude Plaintiff's claim must be dismissed simply because the alleged misrepresentation was

---

[12] 297 Kan. 926, 305 P.3d 622 (2013).

[13] *Rinehart*, 305 P.3d at 630.

[14] *See id.*

[15] 366 P.3d 667, 2016 WL 852881, at *2 (Kan. Ct. App. 2016).

[16] *Id.* at *1.

[17] *Id.*

[18] *Id.* at *3.

made outside of a commercial transaction.  And as a final flourish, the Court is not convinced that the maintenance performed by Defendant on the V-Rod was *not* a commercial transaction, nor that it was over by the time Mizes made the alleged misrepresentation.  In sum, this is not an appropriate ground for summary judgment on Plaintiff's negligence claim.

Defendant next argues that Kansas law did not impose on it a continuing duty to follow-up with Plaintiff after he left the repair shop.  Plaintiff alleges that Defendant breached its duty to him by "[f]ailing to follow-up with Harris after the service event to determine whether his concern about the V-Rod's ABS persisted after assuring Harris' reliance that the V-Rod was 'safe to ride.' " Defendant relies on Kansas product liability law for its conclusion.[19]  It also cites case law that suggests, without a "special relationship" creating a continuing duty of care, there is no such duty.[20]

Notably, Plaintiff provides no citation to any legal authority that supports his contention that Defendant had a duty, under Kansas law, to follow-up with him after the maintenance.  Nor does the Court find any such authority.  Plaintiff's contention that Defendant breached a duty owed to him by failing to follow-up is therefore without a leg to stand on.  Summary judgment is appropriate as to Plaintiff's claim that Defendant breached a duty owed to him by failing to follow-up with him after the service appointment.

Finally, Defendant contends that Kansas law does not impose a duty to warn the plaintiff of a danger already known to him.  Defendant is correct that the "duty to warn does not exist where the other party is already aware of the danger."[21]  But there is a disputed issue of fact as to whether Plaintiff was fully aware of the danger.  While Plaintiff has testified that he read the V-Rod owner's

---

[19] *See Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. 741, 861 P.2d 1299 (1993).

[20] *Calwell v. Hassan*, 260 Kan. 769, 925 P.2d 422, 428–29 (1996).

[21] *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 661 P.2d 348, 364 (1983) (further quotations and citation omitted)

manual in full, and in that manual read that a flashing ABS light signals that the ABS is not functioning properly, he has also testified that Mizes told him the V-Rod was unqualifiedly "safe to ride." This is sufficient to show a genuine dispute of fact as to whether Plaintiff was truly "aware of the danger."

      *2.*    *Intervening and Superseding Cause*

    After a tour through Kansas case law, Defendant suggests that Plaintiff's own, intervening negligence in not seeking additional service when the ABS light continued to flash after the maintenance at Defendant's shop, was the superseding cause of his injuries. "An intervening cause is 'one which actively operates in producing harm to another after the actor's negligent act or omission has been committed.' "[22] Such cause "absolves a defendant of liability only if it supersedes the defendant's negligence" by breaking the causal connection "between the initial negligent act and the harm caused."[23] But "[i]f the intervening cause is foreseen or might reasonably have been foreseen by the [defendant], his negligence may be considered the proximate cause, notwithstanding the intervening cause."[24] The existence of an intervening and superseding cause is a defense for which the defendant bears the burden of proof,[25] and is typically a question of fact best left to the jury.[26]

---

[22] *Puckett v. Mt. Carmel Reg'l Med. Ctr.*, 290 Kan. 406, 228 P.3d 1048, 1060 (2010) (quoting Restatement (Second) of Torts § 441 (1964)).

[23] *Id.* (quoting *Hale v. Brown*, 287 Kan. 320, 197 P.3d 438, 441 (2008)).

[24] *Miller v. Zep Mfg. Co.*, 249 Kan. 34, 815 P.2d 506, 518 (1991).

[25] *Roberts v. Printup*, 595 F.3d 1181, 1189–90 (10th Cir. 2010) (citing *Worden v. Union Gas System, Inc.*, 182 Kan. 775, 324 P.2d 513, 514 (1958)).

[26] *See Taylor v. Casey*, 182 F. Supp. 2d 1096, 1107 (D. Kan. 2002) (finding that the issue of whether a third party's conduct was the "superseding cause of plaintiff's injury is a question of fact best left to the jury"), *aff'd*, 66 F. App'x 749 (10th Cir. 2003).

There is a genuine issue of fact as to the foreseeability of the purported intervening cause—Plaintiff's continued use of the V-Rod without seeking additional service when the ABS light resumed flashing after the maintenance at Defendant's shop.  Intervening negligence is not a superseding cause if it "might have reasonably been foreseen" by Defendant.  Defendant was allegedly negligent, at least in part, because of Mizes' statement to Plaintiff after the maintenance that the V-Rod was "safe to ride."  Drawing all reasonable inferences in Plaintiff's favor, this statement, if made, would foreseeably cause Plaintiff to continue to ride the V-Rod even with the ABS light flashing as it had before the maintenance.  This issue is for the jury and is not appropriately resolved by summary judgment.

Defendant's reliance on *Bereman v. Burdolski*[27] is misplaced.  In *Beremen*, the plaintiff sued the defendant repair garage for negligent repair of his brake system that later resulted in injury.[28]  After the repairs, the plaintiff "determined the brakes were [still] working improperly."[29]  As he drove back to the garage, the car swerved into a utility pole as the plaintiff applied the brakes.[30]  On these facts, the Kansas Supreme Court held that the properly jury instruction was given at trial because "concededly, the defect complained of was known" to the plaintiff.[31]  Defendant argues that, similarly, any defect in the ABS system after Plaintiff left the shop was known to him as he saw the ABS light continue to flash and would have understood the danger it signaled based on his reading of the owner's manual.  But Defendant again fails to contend with

---

[27] 204 Kan. 162, 460 P.2d 567 (1969).

[28] *Id.* at 568.

[29] *Id.*

[30] *Id.*

[31] *Id.* at 569.

the disputed fact that Mizes told Plaintiff the V-Rod was unqualifiedly "safe to ride" after the service.  Plaintiff could have reasonably understood this to mean that it was safe to ride *in spite of* the ABS light's flashing.  The court's decision in *Bereman* does not persuade this Court that summary judgment is warranted.

In a similar vein, Defendant argues that Plaintiff's negligent misrepresentation claims are barred by his failure to seek additional service on the V-Rod when the ABS light continued to flash.  Defendant points out that Kansas law requires that Plaintiff prove he "reasonably relied" on the false information.[32]  Reliance, it argues, cannot be reasonable when the plaintiff "possesses information which would be a 'red light to any normal person of his intelligence and experience.' "[33]  But again, Plaintiff's understanding from the owner's manual that the flashing ABS light meant the ABS was not working was tempered by the purported fact that Mizes told him the V-Rod was "safe to ride."  Under these circumstances, it is for the jury to decide whether Plaintiff's reliance was reasonable.

Plaintiff's negligence claims, with the exception of his claim that Defendant owed him a duty to follow-up, are not appropriately resolved by summary judgment.  Accordingly, Defendant's Motion as to those claims is granted in part and denied in part.

**B.     KCPA Claims**

Defendant also seeks summary judgment as to Plaintiff's claims under the KCPA.  At the outset, Plaintiff believes that that any challenges to the "adequacy" of his KCPA claims have already been rejected by the Court in its Order denying Defendant's Motion to Dismiss (Doc. 24).

---

[32] *Rinehart*, 305 P.3d at 630.

[33] *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 739 P.2d 444, 452–53 (1987) (quoting *Goff v. Am. Sav. Assoc.*, 1 Kan. App. 2d 75, 561 P.2d 897, 903 (1977)).

This is incorrect.  In that Order, the Court found that none of the grounds raised by Defendant—namely, abandonment, waiver, res judicata, and the expiration of the statute of limitations—barred Plaintiff from bringing his KCPA claims in this action.  The Court did not insulate these claims from later, substantive challenges.  It is those challenges the Court now considers.

     1.     *Deceptive Acts and Practices*

The KCPA prohibits suppliers from "engag[ing] in any deceptive act or practice in connection with a consumer transaction."[34]  The statute provides a non-exhaustive list of *per se* deceptive acts and practices.  Relevant to this case, these include:

> (1) Representations made knowingly or with reason to know that:
>
> > (A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have
> >
> > (C) property or services are of a particular standard, quality, grade, style, or model, if they are of another which differs materially from the representation
>
> (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact
>
> (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact.[35]

The deceptiveness of a challenged act or practice is ordinarily a question of fact for the jury, but "summary judgment is appropriate if there is no evidence of deceptive conduct."[36]

K.S.A § 50-626(b)(2) and (b)(3) both require a "willful" act on the part of the defendant.  A "willful" act is one done with "an intent to harm the consumer."[37]  This is a demanding standard,

---

[34] K.S.A. § 50-626(a).

[35] *Id.* § 50-626(b)

[36] *Crandall v. Grbic*, 36 Kan. App. 2d 179, 138 P.3d 365, 378 (2006).

[37] *Unruh v. Purina Mills, LLC*, 289 Kan. 1185, 221 P.3d 1130, 1139 (2009).

-14-

and thus "[i]t is not sufficient to allege that the supplier willfully gave information that later proved to be false."[38]  Rather, to show willful conduct—and to survive summary judgment— "a consumer must provide some indication that would allow a reasonable jury to conclude that the supplier had a designed purpose to do wrong, *i.e.*, that the supplier intended to give the information even though the supplier knew that it was false."[39]

There is a genuine dispute of material fact was to whether Mizes knew, based on everything available to him at the time of his conversation with Plaintiff, that the V-Rod was unsafe to ride. Defendant highlights Mizes' failure to uncover any issues during his inspection and attempted diagnosis of the V-Rod's ABS issues.  It is uncontroverted that his investigation yielded no fruit in the way of ABS problems, so according to Defendant, this settles the issue of its purported knowledge once and for all.  It follows that when Mizes allegedly told Plaintiff the V-Rod was "safe to ride," there is no evidence that he willfully gave him incorrect information or that he did so knowingly or with reason to know.

Defendant's discussion omits several key pieces.  First, it is uncontroverted that when Plaintiff first turned his bike over to Defendant's care, he informed Mizes that he had observed the ABS light functioning erratically at operating speeds.  Second, and relatedly, Mizes admits that if an ABS light is on continuously, the motorcycle would be dangerous to ride.  Thus, it becomes clear that Mizes knew, from Plaintiff, that his ABS light was coming on when it was not supposed to be on, and Mizes admits that he knew this would present a safety concern.  And yet, Mizes allegedly told Plaintiff that the V-Rod was unqualifiedly "safe to ride."  While Mizes may not have

---

[38] *Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 298 Kan. 503, 314 P.3d 852, 865 (2013) (alterations omitted) (quoting *Tufts v. Newmar Corp.*, 53 F. Supp. 2d 1171, 1179 (D. Kan. 1999)).

[39] *Id.* (alterations omitted) (quoting *Tufts*, 53 F. Supp. 2d at 1179).

been able to confirm independently the behavior of the ABS system and light that Plaintiff reported, there is at least some evidence that he had knowledge of it and the danger it presented. A reasonable jury, based on the foregoing, could conclude that Mizes, knowingly or with reason to know, represented that the V-Rod had characteristics it did not have, that it was of a quality that differed materially from the representation, and that Mizes intended to give false information even though he knew it to be false.

Defendant finally argues that any representations Mizes may have made were not part of the "consumer transaction," as they took place after the transaction had already ended. Mizes was, in its view, merely confirming that the transaction had ended. A "consumer transaction is "a sale, lease, assignment or other disposition for value of property or services within this state . . . to a consumer; or a solicitation by a supplier with respect to any of these dispositions."[40]  Defendant, however, fails to consider that neither section of the KCPA requires that every act complained of took place during a "consumer transaction."  Rather, the acts complained of must have taken place "in connection with a consumer transaction."[41]  Defendant, having apparently misread the statute, presents no legal argument as to why a statement made in reference to the service provided, though after the property was returned to the owner, is not still "in connection with" the preceding transaction.  Accordingly, summary judgment is not appropriate as to Plaintiff's claim under K.S.A. § 50-626.

2.      *Unconscionable Acts and Practices*

---

[40] K.S.A. § 50-624(c).

[41] *Id.* § 50-626(a).

The KCPA also prohibits a supplier from engaging in unconscionable acts and practices in connection with a consumer transaction.[42]  "The unconscionability of an act or practice is a question for the court," considering "circumstances of which the supplier knew or had reason to know."  The statute then gives a list on non-exhaustive circumstances that the Court should consider when determining whether a particular act or practice was unconscionable.  Of these, Plaintiff seems to cite three in support of his claim: he contends that Defendant (1) took advantage of Plaintiff's ignorance as to technical and safety issues,[43] (2) denied Plaintiff any "material benefit" from the transaction,[44] and (3) made misleading statements of opinion on which Plaintiff was likely to rely to his detriment.[45]  Plaintiff's claim of unconscionability does not "stand or fall based solely on the presence or absence of these statutory circumstances,"[46] but they do provide a helpful starting point.  Unconscionability requires, at base, both deceptive bargaining conduct and unequal bargaining power.[47]

K.S.A. § 50-627(b)(1) protects consumers from being taken advantage of because of "infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor."  Plaintiff alleges he was ignorant as to the technical and safety issues of the V-Rod because of his general inexperience with motorcycles, and Defendant took advantage of this.  But K.S.A. § 50-627(b)(1) does not protected every consumer who is less experienced in the supplier's

---

[42] *Id.* § 50-627(a).

[43] *See id.* § 50-627(b)(1) ("The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's . . . ignorance.").

[44] *See id.* § 50-627(b)(3) ("[T]he consumer was unable to receive a material benefit from the subject of the transaction.").

[45] *See id.* § 50-627(b)(6) ("[T]he supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment.").

[46] *Louisburg Bldg. & Dev. Co. v. Albright*, 45 Kan. App. 2d 618, 252 P.3d 597, 616 (2011).

[47] *Reed*, 314 P.3d at 868.

business than the supplier, or else it would apply to nearly every transaction. Instead, it protects a consumer from being put in "a disadvantageous bargaining position that was different from any other 'average' buyer who was making a purchase from an experienced seller of manufactured homes."[48]   While it is probably true that Plaintiff did not have experience in motorcycle maintenance, there are not facts to suggest he was any different in this than the "average" customer of Defendant, an experienced motorcycle maintenance specialist. K.S.A §50-627(b)(1) does not fit Plaintiff's case.

The same is true for K.S.A. § 50-627(b)(3), which protects a consumer who was "unable to receive a material benefit from the subject of the transaction." Kansas courts have relied on the 1973 legislative comments to apply this section when it is "factually impossible for the buyer to derive any benefit from the product or service."[49] It protects against "such conduct as the sale of two expensive vacuum cleaners to two poor families whom the salesman knows, or has reason to know, share the same apartment and the same rug."[50]   This is not the case before the Court. Plaintiff took the V-Rod in for scheduled maintenance and to have the ABS light checked. Even drawing all inferences in Plaintiff's favor and assuming that he received no material benefit from Defendant's attempt to diagnose the ABS problem, he does not dispute that he still received the remainder of the 1,000-mile scheduled maintenance on the V-Rod. This is not the case, then, where it was factually impossible for him to derive *any* benefit from the service. This section is thus inapposite.

---

[48] *Cornerstone Homes, LLC v. Skinner*, 44 Kan. App. 2d 88, 235 P.3d 494, 503 (2010).

[49] *Albright*, 252 P.3d at 618.

[50] *State ex rel. Stovall v. ConfiMed.com, L.L.C.*, 272 Kan. 1313, 38 P.3d 707, 711 (2002) (further quotations and citation omitted).

Finally, Plaintiff cites K.S.A. § 50-627(b)(6), which protects consumers in the case that "the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment." Plaintiff's claim under this section has legs, as it tracks with Plaintiff's allegations, about which there is a genuine dispute, that Mizes informed Plaintiff the V-Rod was unqualifiedly "safe to ride." This is at least arguably, drawing all reasonable inferences in favor of the Plaintiff, a misleading statement of opinion on which it was likely that he would rely to his detriment.

But this is not all that is required to succeed on a claim of unconscionability. As emphasized by Defendant, the statute specifies that the Court should consider "circumstances of which the supplier knew or had reason to know."[51] Kansas courts have repeatedly made clear that unconscionability requires, at its core, some element of deceptive bargaining conduct on the part of the supplier.[52] Based on this, several courts considering claims under K.S.A § 50-627(b)(6) have found that the plaintiff failed to offer any evidence of the supplier's knowledge. For instance, the Kansas Court of Appeals in *Dana v. Heartland Management Co.*,[53] found that the record was devoid of evidence of deceptive bargaining conduct or unequal bargaining power.[54] It relied in part on the fact that there was no showing, by the plaintiff, "that the defendants knowingly, or with reason to know, made a misleading statement of opinion."[55] Similarly, this Court in *Tufts v. Newmar Corp.*,[56] quoting a legislative comment, noted that "a violation of this subsection would

---

[51] K.S.A. § 50-627(b).

[52] *Willman v. Ewen*, 230 Kan. 262, 634 P.2d 1061, 1064 (1981); *ConfiMed.com, L.L.C.*, 38 P.3d at 714.

[53] 48 Kan. App. 2d 1048, 301 P.3d 772 (2013).

[54] *Id.* at 784-85.

[55] *Id.* at 785.

[56] 53 F. Supp. 2d 1171 (D. Kan. 1999).

occur if a prospective purchaser asked a supplier what the useful life of a paint job was and the supplier, *with reason to know* that repainting would be necessary within two years, responded, 'in my opinion the paint will wear like iron.' "[57]

Defendant argues its conduct here, "while perhaps careless or negligent, does not rise to the level of unconscionable."[58]  In so arguing, it trots out similar arguments to those it made as to Plaintiff's claims of deceptive acts and practices.  It states that there is no evidence of deceptive conduct on the part of Mizes, as his statement to Plaintiff can only be interpreted to say that "at that moment" the V-Rod was safe to ride.  According to Defendant, Mizes made no statements of opinion as to the continued safety of the V-Rod, or that it would otherwise "wear like iron."

This is not persuasive in the least.  A reasonable jury could conclude that Mizes' statement was not only a statement as to the present safety of the V-Rod but was also a prediction or statement of opinion as to its continued safety going forward.  And as laid out above, the Court has concluded that a reasonable jury could find that Mizes engaged in knowing deceptive conduct, in stating that the V-Rod was safe to ride, based on what he understood Plaintiff's complaints to be and his knowledge that similar ABS light behavior indicated danger.

Defendant also argues, based on a statement in the syllabus of *State ex re. Stovall v. Confirmed.com, L.L.C.*,[59] that this case does not fit within the type of situations encompassed by the prohibition in K.S.A. § 50-627 against unconscionable conduct.  That statement is that "[c]onduct which does not involve advertising techniques, contract terms, debt obligation, or limitation of warranties is not the type of conduct intended to be considered unconscionable under

---

[57] *Id.* at 1183.

[58] *Dana v. Heartland Mgmt. Co.*, 48 Kan. App. 2d 1048, 301 P.3d 772, 784 (2013).

[59] 272 Kan. 1313, 38 P.3d 707 (2002).

K.S.A.2000 Supp. 50–627 of the Kansas Consumer Protection Act."[60]  But even if the Court were to read this as a rigid limitation on the types of cases in which unconscionability can be invoked, which it is not necessarily inclined to do, Defendant fails to contend with the court's statement later in that case that "unconscionable contract terms were somewhat expanded by the decision of *Willman v. Ewen*, 230 Kan. 262, 266, 634 P.2d 1061 (1981), in which the contract itself was found to be valid but the *subsequent deceptive conduct* tainted the transaction as unconscionable."[61] Here, though no issues are alleged to exist with the contract between Plaintiff and Defendant, there is an issue of whether subsequent deceptive conduct tainted it as unconscionable.

In sum, summary judgment is not appropriate as to Plaintiff's claim that Defendant engaged in unconscionable conduct in violation of K.S.A. § 50-627.

### 3.  Aggrieved Consumer

Defendant also argues that Plaintiff is not an "aggrieved consumer" under the KCPA, and therefore his claims must be dismissed on that ground.[62]  "To recover damages for either type of violation under the KCPA, a party must establish that he or she was 'aggrieved' by the violation of the Act."[63]  "To be aggrieved under the statute, the consumer must prove that the seller's act has adversely affected the consumer's legal rights."[64]  The consumer must also show "that there was a causal connection between the deceptive act and the claimed injury."[65]

---

[60] *Id.* at 708, Syl. ¶ 7.

[61] *Id.* at 713 (emphasis added).

[62] *See Reed*, 314 P.3d at 863.

[63] *Id.*

[64] *Schneider v. Liberty Asset Mgmt.*, 45 Kan. App. 2d 978, 251 P.3d 666, 671 (2011).

[65] *Id.*

Defendant reasserts its arguments as to causation here, contending that any alleged misrepresentation Mizes made as to the safety of the V-Rod did not cause Plaintiff's injuries, which were instead caused by his own negligence in continuing to ride the V-Rod.  As the Court has already noted, there is a genuine dispute of material fact as to the causal connection between Mizes' alleged statement and Plaintiff's injuries.  Summary judgment is therefore inappropriate on this issue.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 29) is **GRANTED in part and DENIED in part.**

**IT IS SO ORDERED.**

Dated this 18th day of October, 2022.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE