## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JEREMY L. HARRIS,

*Plaintiff,*

vs.

Case No. 21-2264-EFM

CITY CYCLE SALES, INC.,

*Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Plaintiff Jeremy Harris's Second Motion for Attorney's Fees and Expenses (Doc. 129). The jury returned a verdict in Plaintiff's favor on his negligence claim and two of his Kansas Consumer Protection Act ("KCPA") claims. Under the KCPA, the Court may award reasonable attorney's fees to the prevailing party. Plaintiff therefore seeks an attorney fee award in the amount of $1,941,850.31—45% of the judgment amount of $4,481,200 (minus $165,977.09 in advanced litigation expenses) and $760.17 in recoverable costs. For the second time, Plaintiff's Motion lacks the details necessary for this Court to determine a lodestar figure in this case. In lieu of Plaintiff's requested amount, the Court in its discretion awards Plaintiff $701,138.92 in attorney fees and costs as the prevailing party under the KCPA.

## I.        Factual and Procedural Background

In February 2014, Plaintiff purchased a new, 2014 Harley-Davison VRSCDX "V-Rod" motorcycle from a Harley-Davidson dealership in Olathe, Kansas. It came equipped with an antilock brake system ("ABS"), as is standard for this motorcycle. The V-Rod was delivered to Plaintiff at his residence in Junction City, Kansas.

After receiving the V-Rod, Plaintiff rode it to a nearby parking lot to practice maneuvers he had learned in a motorcycle safety class in January 2014.  Plaintiff noticed that, as he drove the V-Rod, the ABS light flashed continuously.  According to the V-Rod owner's manual, the ABS lamp should not remain on or flash at speeds above 3 mph.  The lamp's flashing or remaining on above speeds of three mph means the ABS is not functioning properly.  Plaintiff, having read the manual, was concerned the ABS was not working properly. But when he applied the brakes while practicing, he felt a "slight pulsation" described in the owner's manual as indicative of the ABS's functioning and the wheels did not lock up.  Plaintiff believed this meant the ABS was functioning properly.

Plaintiff drove the V-Rod for several months without incident. But through it all the ABS lamp continued its erratic behavior.  It would often flash continuously—sometimes it would remain illuminated or go off completely for short periods.  On April 14, 2014, Plaintiff took the V-Rod to Defendant for scheduled maintenance.

Defendant is an authorized Harley-Davidson dealer in Junction City, Kansas.  At the time, Defendant had an authorized Harley-Davidson service department.  When he took in the V-Rod, Plaintiff spoke directly with Defendant's service manager, Dean Mizes, and informed him that the ABS lamp had been behaving erratically at operating speeds since he purchased the V-Rod. Defendant agreed to perform the requested maintenance and took possession of the V-Rod.

On April 15, 2014, a representative of Defendant called Plaintiff and told him the requested service was done and his V-Rod was ready for pick-up.  On May 20, 2014, while Plaintiff was approaching an intersection in Fort Riley, he attempted to brake.  As he applied the brakes, Plaintiff saw the ABS warning light illuminate and heard a "loud screech." Plaintiff lost control and fell over, with the V-Rod falling onto his left leg.

Plaintiff originally filed this case in Kansas state court in Geary County. He asserted both negligence and KCPA claims, as he does here.  But sometime prior to trial, Plaintiff decided not to propose an instruction on the KCPA theories of liability, and at trial, the court did not instruct the jury as to those claims.  The jury returned a verdict in favor of the Defendant, finding Plaintiff 100% at fault for his injuries.  Plaintiff appealed, and the judgment was reversed by the Kansas Court of Appeals on the ground that the district court's comparative fault instruction was in error. Plaintiff did not argue his KCPA claim on appeal.  The case was remanded for a new trial in the district court.

Instead, the parties stipulated to the dismissal of the state court case without prejudice. Plaintiff thereafter filed the instant action, asserting both negligence and KCPA claims.  The jury ultimately returned a verdict in favor of Plaintiff. On Plaintiff's negligence claim, the jury found Defendant 75% at fault and Plaintiff 25% at fault. The verdict was split on Plaintiff's KCPA deceptive acts and practices claims, with the jury finding Plaintiff had proved his case on two out of four of his theories. The jury found that Defendant's KCPA violations caused Plaintiff's damages in the amount of $4,481,200.

As the prevailing party, Plaintiff filed his initial motion for attorney fees on March 23, 2023.  In that motion, Plaintiff sought a fee award of $1,941,850.31.  This amount represented the 45% contingency fee agreement between Plaintiff and his counsel when considering the judgment

amount of $4,481,200, plus $165,977.09 in advanced litigation expenses.  The Court denied that motion without prejudice because Plaintiff failed to present any evidence—no time records, no examples of comparable market rates, nothing—beyond his counsel's *ipse dixit* that the amount sought constituted a reasonable award of attorney fees.

Now, Plaintiff brings his Second Motion for Attorneys' Fees.  Throughout this litigation, Plaintiff has been represented by Daniel Adam Kopp, R. Douglas Gentile, Rachel Nelson Boden, and Jeffrey Rowe[1] of Rouse Frets White Goss Gentile Rhodes, P.C. ("Rouse Frets"), as well as Thomas Dickerson of Dickerson Oxton LLC.  Kopp is an associate with four years' experience. Gentile has 39 years' experience and is a partner.  Boden is also a partner with 10 years' experience.  Finally, Rowe is a partner with 16 years' experience.[2]  Dickerson has 13 years' experience as an attorney.  Each attorney operates in the Kansas City area.

Plaintiff has also attached voluminous time records—sans summaries or helpful charts— from attorneys and staff at Rouse Frets.  These records date from 2016 to the present and purportedly show the number of hours worked as 4,674.52.  Plaintiff does not specify the amount of time each attorney individually spent on the case.  Furthermore, Plaintiff make no attempt to distinguish the time spent on his case in state court and on appeal to the Kansas Court of Appeals from the time spent on this case once reasserted in federal court.  Plaintiff admits that attorneys and staff at Dickerson Oxton did not keep time records.

---

[1] The case page on CM-ECF labels Rowe as an attorney with Dickerson Oxton, LLC.  But in his Motion, Plaintiff refers to Rowe as working at Rouse Frets.  Plaintiff does not explain this apparent contradiction.

[2] In his affidavit, Rowe identifies six other attorneys and two paralegals who also billed time in Plaintiff's case.  None of the other attorneys have entered their appearances in this case.

To demonstrate comparable market rates, Plaintiff attaches two exhibits showing a Missouri Lawyers Media's 2022 survey of hourly billing rates for attorneys in Kansas City. These exhibits show a median rate of $425, with an average associate rate of $325 compared to an average partner rate of $488. Law firm staff billed on average $150 per hour. This exhibit does not distinguish between the billing rates of attorneys based on their years of experience. Plaintiff also submits affidavits from his counsel stating that 45% is a reasonable contingency fee in the local market.

## II.     Legal Standard

The KCPA states that "the court may award to the prevailing party reasonable attorney fees, including those on appeal, limited to the work reasonably performed if . . . a supplier has committed an act or practice that violates this act and the prevailing party is the consumer."[3]

When considering a request for attorney's fees under a Kansas statute, courts weigh the factors set forth in Kansas Rule of Professional Conduct ("KRPC") 1.5(a).[4] Rule 1.5(a) requires that a lawyer's fee be "reasonable," and provides eight factors touching on the reasonableness of a particular fee. These factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

---

[3] K.S.A. § 50-634(e).

[4] *Louisburg Bldg. & Dev. Co. v. Albright*, 45 Kan. App. 2d 618, 252 P.3d 597, 619 (2011) (considering Rule 1.5(a) factors in a case requesting fees under the KCPA); *Bank Midwest, N.A. v. Millard*, 2012 WL 5876643, at *1 (D. Kan. 2012) (same).

(8) whether the fee is fixed or contingent.[5]

It is the burden of the party seeking attorney's fees to "establish the reasonableness of each dollar, each hour, above zero."[6]  A "reasonable attorney's fee is one that is adequate to attract competent counsel, but . . . does not produce windfalls to attorneys."[7]  While an evidentiary hearing is "generally preferred" when a motion for attorney fees raises factual disputes, the Court may decide such a motion without a hearing based on its familiarity with the case, so long as the parties are given "ample opportunity to brief and to argue" the motion and provide pertinent affidavits.[8]

### III.    Analysis

First, the Court finds that this Motion does not warrant an evidentiary hearing.  The parties have had ample opportunity to brief the issues and provide evidence in support of their positions.  In fact, this is Plaintiff's second attempt to furnish the Court with the requisite evidence from which it can establish the reasonableness of the award requested.  Plaintiff should not hope for a third bite at the apple.

### A.    Application of the factors under KRPC 1.5(a).

*1.     Time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.*

Unlike Plaintiff's first motion for attorney fees, Plaintiff attaches time records— voluminous time records—for the attorneys at Rouse Fret.  However, Dickerson did not keep time

---

[5] KRPC 1.5(a).  This Court has adopted the Kansas Rules of Professional Conduct as adopted and amended by the Supreme Court of Kansas. D. Kan. R. 83.6.1(a).

[6] *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986).

[7] *Id.*

[8] *Michael A. Cramer, MAI, SRPA, Inc. v. United States*, 47 F.3d 379, 383 (10th Cir. 1995) (quotation and citation omitted).

entries for his work on this case.  That was his choice and "the [C]ourt assigns responsibility for

that decision to counsel."[9]  Because "the absence of any timekeeping records nullifies the [C]ourt's

ability to apply this factor to this case,"[10] the Court cannot assess the time and labor spent on this

case by Dickerson in calculating a reasonable attorney fee award.

It is the movant's burden when seeking attorney fees to show the number of hours worked

on a case and that those numbers were reasonable.[11]  "Where several causes of action are joined

and only some of them permit the award of attorney fees, the work on several causes must be

segregated in determining an attorney fee award."[12]  The sole exception is if "the KCPA claims

are 'inextricably intertwined' with other claims."[13]  Claims are inextricably intertwined if they

"aris[e] out of the same transaction and are so interrelated that their prosecution or defense entails

proof or denial of essentially the same facts."[14]  Should counsel choose not to segregate his time

for claims that are not inextricably intertwined, "it could well be that a court could find a failure

of proof and award no attorney fees."[15]

Plaintiff's only claim to attorney fees arises from his KCPA claim.  However, Plaintiff

frames his "reasonable" request for attorney fees as incorporating all the time his counsel spent in

state court and on appeal.  As Plaintiff bears the burden to show the reasonableness of any award

---

[9] *Sedlock v. Overland Park Med. Invs., LLC*, 2021 WL 1056516, at *4 (D. Kan. 2021).

[10] *Id.*

[11] *See Mares*, 801 F.2d at 1210.

[12] *Harris v. Am. Gen. Fin., Inc.*, 259 F. App'x 107, 112 (10th Cir. 2007) (quoting *DeSpiegelaere v. Killion*, 24 Kan. App. 2d 542, 947 P.2d 1039, 1044 (1997)).

[13] *Id.* (quoting *York v. InTrust Bank, N.A.*, 265 Kan. 271, 962 P.2d 405, 430 (1998)).

[14] *DeSpiegelaere*, 947 P.2d at 1043 (further citations and quotations omitted); *see also Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1253 (D. Kan. 2017) ("For purposes of attorneys' fees, the Tenth Circuit holds claims are related if they are based on a common core of facts or are based on related legal theories.").

[15] *DeSpiegelaere*, 947 P.2d at 1045.

of attorney fees, it is likewise his burden to show that his negligence and KCPA claims were inextricably intertwined.

The parties do not dispute that the two claims share a common core of facts, despite the comparatively unrelated legal theories.[16]  They stem from Defendant failing to take proper steps to repair the V-Rod and communicating to Plaintiff that it was safe to ride.  Thus, the Court finds that these claims are inextricably intertwined.  Accordingly, the time Plaintiff's counsel spent on discovery related inextricably to both claims.

However, Plaintiff's state court trial and appeal did not incorporate Plaintiff's KCPA claim. Thus, Plaintiff cannot reasonably assert that he should recover attorney fees for time voluntarily spent *not litigating* his KCPA claim.

Unfortunately, Plaintiff does exactly that.   Furthermore, Plaintiff makes no effort to distinguish between his counsel's time spent on discovery during the state court litigation—related to both claims—and his state court trial and appeal, which relate solely to his negligence claim. Instead, he attaches the full record of hours kept by the Rouse Fret attorneys.  It is not the Court's role, however, to parse through nearly a hundred pages of time records to determine which entries reasonably relate to the KCPA claim.[17]  This is Plaintiff's burden, and the Court will not carry it for him.

---

[16] *See* Def.'s Response, Doc. 132 at 7.  Contrary to Defendant's contention, the Court could find no requirement under either Tenth Circuit or Kansas precedent that the two legal theories be interrelated for a prevailing party to recover attorney fees.  The only requirement appears to be that the separate causes of action involve the same core facts.

[17] *See, e.g.*, *Swan Glob. Invs., LLC v. Young*, 2021 WL 3164242, at *2 (D. Colo. 2021) ("[T]the Court has no obligation to sift through Defendant's invoices in an attempt to discern which fees relate to the discovery violations and which relate to other aspects of the litigation.  'The burden is not for the court to justify each dollar or hour deducted from the total submitted by counsel.  It remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero.' ") (quoting *Mares*, 801 F.2d at 1210).

Defendant, however, agrees that Plaintiff's time records show 1,647.95 hours spent working on Plaintiff's case after it was reasserted in federal court. Defendants do not dispute that these hours were reasonable, only that Plaintiff fails to differentiate between time worked on the negligence claim and time worked on the KCPA claim. Because the parties agree that this number represents the numbers of hours expended on Plaintiff's KCPA and intertwined negligence claim, the Court will consider that to be the starting point for its analysis.

Regarding novelty and difficulty, this case required expert testimony on both medical and technical issues. While not particularly novel, it did increase the case's difficulty. Furthermore, there can be no doubt that educating the jury on the case's technical issues and performing all the other necessary legal tasks to bring this claim to trial required skill. The Court concludes that these elements help confirm that 1,647.95 hours constitutes a reasonable number of hours spent on this case.[18]

2.      *The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.*

There is no dispute that by taking this case Plaintiff's counsel forewent the opportunity to pursue other employment simply because litigation takes time. This is true not just of Plaintiff's case but of any case. Plaintiff's counsel present no evidence of any other reasons this would preclude other employment, such as by alienating potential clients, damaging their reputation, or creating difficult conflicts of interest. Overall, this factor slightly favors an award of attorney fees.

---

[18] To be clear, Plaintiff makes no argument whatever about what a *reasonable number of hours* would be here. He neither submits affidavits from attorneys showing the number of hours was reasonable nor points to caselaw dealing with similar cases and the amount of hours found to be reasonable there. Considering that no discovery took place after Plaintiffs' claims were reasserted in federal court, 1,647.95 hours seems like a staggeringly overblown figure in the Court's experience. However, the Court will treat this figure as reasonable for two reasons: (1) the parties do not dispute the reasonableness of this figure and (2) the Court considers it to tangentially represent the time spent by counsel on discovery matters in the underlying state court litigation.

3.      *The fee customarily charged in the locality for similar legal services.*

Plaintiff's citation to the Missouri Lawyers Media's 2022 survey provides relevant data on reasonable rates in the community.  Less than a year ago, this Court found that a reasonable rate for an attorney in the Kansas City area with over two decades' experience was $425.[19]  It also found that $325 per hour for an associates' time to be reasonable as well.[20]  In comparison, this Court in 2020 declared reasonable rates to be $625 per hour for a partner with 27 years' experience, $425 per hour for counsel with 13 years' experience, and $350 per hour for associate with seven years' experience.[21]

However, Plaintiff makes no attempt to distinguish the time spent by his various counsel except through submitting the voluminous billing entries sans summaries.  Just as the Court will not sift through Plaintiff's records to discern what entries relate to his KCPA claim, it will not perform Plaintiff's job of digging through the mass of entries to distinguish the time billed by each attorney.  Instead, the Court considers the median rate contained in the Missouri Lawyers Media's 2022 survey—$425 per hour—to be reasonable as applied to the reasonably worked.

Plaintiff also offers the affidavits of Rowe and Dickerson claiming that the usual rates charged by lawyers working on a contingency fee basis fall between 33.33%–50% of the overall recovery.  The Court, however, places less stock in Plaintiff's contingency fee when considering an attorney fee award because the KCPA expressly limits any attorney fee award to "work

---

[19] *Shigo v. Clark*, 2022 WL 16854271, at *3 (D. Kan. 2022).

[20] *Id.*

[21] *See M.B. v. Howard*, 555 F. Supp. 3d. 1047, 1063 (D. Kan. 2021) (noting that "cases assessing [the District of Kansas] market have found hourly rates between $175 to $625 reasonable based on the attorney's experience for litigation").

reasonably performed." Therefore, the Court considers the relevant hourly rates for hours reasonably expended more important that Plaintiff's contingency fee agreement with his counsel.

        *4.      The amount involved and the results obtained.*

        Plaintiff's success—albeit on his second attempt—cannot be denied. He procured a judgment of $4,481,200. This is a substantial recovery and a definite "win" for his attorneys. Thus, this factor favors awarding attorney fees.

        *5.      The time limitations imposed by the client or by the circumstances.*

        Plaintiff offers no evidence or argument of any time limitations in this case.

        *6.      The nature and length of the professional relationship with the client.*

        Although Plaintiff asserts that he has employed his counsel since 2016, their professional relationship does not predate the present litigation. Thus, this factor would not support awarding a higher fee than usual because of the parties' professional relationship.

        *7.      The experience, reputation, and ability of the lawyer or lawyers performing the services.*

        The Court does not doubt the experience, ability, or reputation of Plaintiff's counsel. Their relevant years of experience are as stated above. Dickerson also is an active participant in the Kansas Trial Lawyers Association and has given numerous talks to various organizations. Thus, the Court considers this factor relevant when determining the attorney fee award.

        *8.      Whether the fee is fixed or contingent.*

        The Kansas Supreme Court has "acknowledge[ed] that the fee arrangement is not controlling or dispositive in determining what is a reasonable sum" when awarding attorney fees.[22]

---

[22] *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 135 P.3d 1127, 1137 (2006).

That is, "[t]here is no presumption that a contingent fee agreement approved by a court establishes a reasonable [attorney fee award]."[23]

For example, in *Self v. Uhl*,[24] this Court applied Kansas law and ultimately determined that an award of attorney fees equal to 40% of the plaintiff's gross settlement recovery was reasonable.[25]  The Court "cautioned future fee applicants," however, stating "[n]o one should read this Memorandum and Order as ruling that a 40% contingent fee award is per se reasonable, or even presumptively reasonable."[26]  Instead, based on the unique circumstances and the Court's knowledge of the time spent by the plaintiff's counsel on that case, the Court urged that "the reader should conclude *only* that such an award is reasonable *in this case*."[27]

*Self*, however, did not deal with the KCPA.  Nor does either party point to any case arising under the KCPA where a court considered a contingency fee in awarding attorney fees.  The KCPA's language limiting attorney fees awards to "work reasonably performed" diminishes the usefulness of considering contingency fee agreements.  This is because contingency fees examine the result—not the work reasonably required to get there.  Therefore, the Court does not find this factor probative in awarding fees under the KCPA.

## B.    Considering all the factors under KRPC 1.5(a), $700,378.75 constitutes a reasonable award of attorney fees in this case.

In the end, the Court concludes that Plaintiff should be awarded $700,378.75 in attorney fees under the KCPA.  This amount reflects the 1,647.95 hours documents by Plaintiff's counsel

---

[23] *Id.* at 1130.

[24] 2017 WL 2264488 (D. Kan. 2017).

[25] *Id.* at *5

[26] *Id.*

[27] *Id.* (emphasis added).

since reasserting Plaintiff's KCPA claim multiplied by $425, the median rate of attorneys in theKansas City area.  It also considers the KCPA's limitation on attorney fee awards and Plaintiff's failure to show that all of his counsel's time billed was reasonably spent on his KCPA claim or the underlying discovery.  Furthermore, because the KCPA limits an attorney fee award to "work reasonably performed," the Court in its discretion will not upwardly adjust this presumptively reasonable lodestar figure to account for Plaintiff's contingency fee agreement.

Additionally, Plaintiff requests that he be awarded costs as the prevailing party in the amount of $760.17.  Defendant makes no objection to this request.  The Court, therefore, awards Plaintiff $760.17 in recoverable costs.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Attorney Fees (Doc. 129) is **GRANTED** in the amount of $700,378.75 plus costs in the amount of $760.17.

**IT IS SO ORDERED.**

Dated this 22nd day of September, 2023.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE